UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CURTIS D. McGOUGHY,

            Petitioner,

v.                                              CASE NO. 05-CV-71147-DT
                                                HONORABLE LAWRENCE P. ZATKOFF
PAUL H. RENICO,

            Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This matter is pending before the Court on petitioner Curtis D. McGoughy's *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition attacks Petitioner's state conviction for first-degree murder. The Court has concluded for reasons provided below that the habeas petition must be denied.

### I. Background

On October 9, 2002, a circuit court jury in Jackson County, Michigan found Petitioner guilty of first-degree murder, MICH. COMP. LAWS § 750.316(1)(a), and assault with intent to commit murder, MICH. COMP. LAWS § 750.83. The convictions arose from charges that Petitioner fatally stabbed Tamara Gant and subsequently stabbed her six-year old son, Ray Anthony Neal, with intent to murder him. Petitioner's defense at trial was that he was guilty of the lesser-included offense of second-degree murder, because the stabbing was the result of a sudden impulse and there was no evidence of premeditation. The jury was unpersuaded by Petitioner's defense and convicted him as charged.

The trial court sentenced Petitioner to life imprisonment for the murder and to a concurrent

sentence of approximately thirty-five to seventy-one years in prison for the assault on Ray Anthony

Neal. The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished decision,

*see People v. McGoughy*, No. 245179 (Mich. Ct. App. Feb. 24, 2004), and, on September 28, 2004,

the Michigan Supreme Court denied leave to appeal. *See People v. McGoughy*, 471 Mich. 884; 688

N.W.2d 505 (2004).

Petitioner submitted his habeas corpus petition to the Court on March 15, 2005. His sole

ground for relief is that there was insufficient evidence to support his conviction for first-degree

murder. Respondent has urged the Court through counsel to deny the habeas petition.

## II. Standard of Review

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state court's

adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision

is an "unreasonable application of" clearly established federal law "if the state court identifies the

correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case." *Id*. at 413. "Avoiding these pitfalls does not require

2

citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, __ U.S. __, 125 S. Ct. 1670 (2005).

### III. Discussion

Petitioner alleges that there was insufficient evidence of premeditation to support his conviction for first-degree murder. He maintains that he should have been convicted of second-degree murder, which does not require finding that the defendant premeditated the murder.

### A. Relevant Case Law

The "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S. [276, 282 (1966)] (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Johnson v. Louisiana*, 406 U.S. [356, 362 (1972)]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (footnote omitted) (emphasis in original).

*Jackson* "must be applied with explicit reference to the substantive elements of the criminal

3

offense as defined by state law." *Id*. at 324 n.16.  In Michigan, jurors "can convict [a defendant] of murder only when they are convinced beyond a reasonable doubt that (1) the defendant intended (actually or impliedly) to kill and (2) circumstances of justification, excuse or mitigation do not exist."  *People v. Morrin*, 31 Mich. App. 301, 323; 187 N.W.2d 434, 445 (1971).  First-degree murder is distinguishable from second-degree murder in that it requires a finding that the defendant acted with premeditation and deliberation.  *Id.*, 31 Mich. App. at 328; 187 N.W.2d at 448-49.

> To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem.  As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood.  While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look."

*Id.*, 31 Mich. App. at 329-30; 187 N.W.2d at 449 (footnotes omitted).

Factors to be considered when determining whether the defendant premeditated and deliberated a murder are:  "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted."  *People v. Plummer*, 229 Mich. App. 293, 300; 581 N.W.2d 753, 757 (1998).  Premeditation and deliberation may be proved by circumstantial evidence.  *People v. Herndon*, 246 Mich. App. 371, 415; 633 N.W.2d 376, 404 (2001).

### B.  The State Court's Decision

Petitioner's attorney conceded at trial that Petitioner murdered Tamara Gant.  The only issue, therefore, is whether Petitioner premeditated and deliberated the murder.  The Michigan Court of

Appeals summarized the evidence adduced at trial as follows:

> [D]efendant unsuccessfully attempted to steal the car of his friend, Patricia Oliver, when she refused to allow him to borrow it. Shortly afterward, he forced his way into the victim's house by using a foot-long butcher knife to cut the screens of at least four different windows until he succeeded to enter the house by cutting through the screen door to the kitchen. He then went to the victim's bedroom, where he proceeded to stab the victim fifty-two times. The evidence established that it "took time" to inflict the stab wounds. The stab wounds included eighteen stabs wounds to the right side of the neck, four stab wounds around the right eye, two stab wounds into the right eye, eight stab wounds to the left shoulder, and five stab wounds to the chest, one fatal. At some point during the stabbing, the victim's six-year old son woke up and entered the bedroom where he saw defendant stabbing his mother on her head and back. The victim told her son to call 911. The boy called 911 and the Central Dispatch recorded about three minutes of the screaming. However, the boy believed that the police took too long to arrive, so he hung up. He returned to the bedroom, where he told defendant to stop hurting his mother. The victim pleaded with defendant twenty times to allow her to "say goodbye to my son." Defendant repeatedly told the victim to "shut up." Once the victim died, defendant turned to the victim's son and stabbed him eleven times, nearly killing him.

> Following the stabbings, defendant went to the house of another friend, Solanda Oliver, where he changed his bloody clothes and disposed of them in a dumpster. Meanwhile, because the victim's son knew defendant as a friend of his mother's, he gave the police defendant's name. Later that day, the police located defendant walking on Interstate-94, only sixteen miles short of the Indiana state line. Upon being arrested, defendant stated that he "had almost made it." He first denied involvement in the crime[,] but later changed his story and provided conflicting versions of the crime. He also informed the police that he tried to throw the knife onto the roof of a school but the knife hit and broke a window on the second story of the school. He then successfully threw the knife onto the roof. The police located the knife and the broken window.

*McGoughy*, Mich. Ct. App. No. 245179 at 2. The court of appeals concluded that

there was sufficient evidence for the jury to convict defendant of first-degree premeditated murder. The evidence established a time span between the intent and the murder, with ample time for defendant to take a second look.

*Id.*

## C.  Analysis

The state court's findings of fact are supported by the record, and Petitioner has not rebutted them with clear and convincing evidence.  He argues on the basis of Dr. Bernardino Pacris's testimony that the crime was the result of a sudden impulse and, therefore, he is guilty of only second-degree murder.

Dr. Pacris performed the autopsy on Tamara Gant.  He testified that the crime was a case of "overkill."  (Tr. Oct. 7, 2002, at 237.)  Petitioner interprets this comment to mean that the crime was one of jealousy or passion and the result of sudden impulse, not substantial reflection.  Whether Dr. Pacris meant to imply that the crime was not premeditated is unclear from the record.  His comment was precipitated by a question about how he reached the conclusion that the attack on Tamara occurred from a variety of angles.  His response to the prosecutor's question was:

> Basing on this multitude of stab wounds of different orientations.  This -- most cases that I -- that I've seen in my limited practice, it's a case of overkill.  In most cases that I did way back in Baltimore, Maryland, something like jealousy or -- with intent, or a crime of passion to (inaudible).

(*Id.*)

Even if this testimony was meant to suggest that Petitioner acted out of jealousy or a sudden impulse, Dr. Pacris also testified that a struggle had ensued and that it probably took "a lot of time" and possibly even "an extended period of time" to inflict the fifty-two wounds.  (*Id.* at 237-9.)  He stated that the deepest wound was a chest wound, which nicked the aorta and measured two and a half inches deep.  (*Id.* at 242.)

6

There was additional evidence that Petitioner knew Tamara Gant and had dated her sister, Mikeleha Tillman, whom he met at Tamara's home.  Mikeleha terminated the relationship with Petitioner after dating him for two months.  (*Id*. at 107-09.)  Although no motive was established for the murder, there was testimony suggesting that Petitioner slashed a few screens to enter the victim's home and that he used a thirteen-inch knife to inflict the fatal wounds.  (*Id*. at 178-83 and 293-97.)  He stabbed or cut Tamara Gant fifty-two times, including eighteen times in the right side of the neck where he transected the carotid artery and the jugular vein, and five times in the chest, where he inflicted a fatal wound.  (*Id*. at 231-34.)

During the stabbing, Petitioner had more than enough time to take a "second look" at his actions.  Petitioner was stabbing Tamara when her son Ray entered Tamara's bedroom.  Ray told Petitioner to stop hurting his mother, and Tamara directed Ray to call the police.  Ray complied by calling the 911 operator once or twice.  In addition, Tamara asked Petitioner why he was attacking her; she also asked him to let her say "good bye" to Ray.  (Tr. Oct. 8, 2002, at 370-77.)  The prosecutor theorized that Petitioner subsequently tried to kill Ray to eliminate an eyewitness to the crime.

After the stabbing, Petitioner stuffed his bloody clothes in his friend's bag of trash, which he placed in a dumpster.  He also discarded the bloody knife and was attempting to leave the state when he was apprehended.  (Tr. Oct. 7, 2002, at 249-55 and 293-97; Tr. Oct. 8, 2002, at 327-33.)  He initially denied knowing anything about the crime.  He later acknowledged being involved in the incident, but he minimized his role by stating that he had acted in self defense or was under the influence of cocaine.  (Tr. Oct. 7, 2002, at 271, 289-92, and 305-07.)

### IV.  Conclusion

A rational trier of fact could have concluded from Petitioner's actions before, during, and after the crime that Petitioner premeditated and deliberated the murder of Tamara Gant. Therefore, the state court's conclusion that there was sufficient evidence of premeditated murder was not contrary to, or an unreasonable application of, *Jackson*. Petitioner's application for the writ of habeas corpus is DENIED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  January 19, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on January 19, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290